UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KEVIN A. WARD, SR. and PAMELA
WARD, individually and as Administrators
of the Estate of Kevin A. Ward, Jr.,
deceased,

                Plaintiffs,

  -v-                                                  7:15-CV-1023

ANTHONY WAYNE STEWART,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                  OF COUNSEL:

FARACI, LANG LAW FIRM               HADLEY L. MATARAZZO, ESQ.
Attorneys for Plaintiffs
28 East Main Street, Suite 1100
Rochester, NY 14614

THE LANIER LAW FIRM                 JUDSON A. WALTMAN, ESQ.
Attorneys for Plaintiffs
6810 FM 1960 Road West
Houston, TX 77069

126 East 56th Street, 6th Floor           WILLIAM M. LANIER, ESQ.
New York, NY 10022

WOODS OVIATT GILMAN LLP          BRIAN D. GWITT, ESQ.
Attorneys for Defendant
350 Main Street, Suite 1900
Buffalo, NY 14202

DAVID N. HURD
United States District Judge

**MEMORANDUM–DECISION and ORDER**

**I. INTRODUCTION**

Plaintiffs Kevin A. Ward, Sr. and Pamela Ward (collectively "plaintiffs") initially filed this action in Supreme Court, Lewis County, against defendant Anthony Wayne Stewart ("Stewart" or "defendant"), asserting four causes of action arising from his involvement in the untimely death of their son, Kevin A. Ward, Jr. ("decedent"). Thereafter, defendant removed the action to federal court, answered plaintiffs' complaint, and asserted a counterclaim for indemnity arising out of a liability release that allegedly covers the events giving rise to plaintiffs' claims.

Stewart has now moved pursuant to 28 U.S.C. § 1404(a) to transfer venue in this action to the United States District Court for the Western District of New York, Rochester Division. Plaintiffs have not filed a formal opposition; rather, they have submitted a proposed stipulated order consenting to transfer. The motion will be considered on the basis of these submissions without oral argument.

**II. BACKGROUND**[1]

In the years prior to his death, decedent had enjoyed a brief but promising career as a young race car driver, finding success "at every level of competition" as he quickly progressed to racing "bigger and faster cars on bigger and faster tracks." Compl. ¶¶ 4-5. Stewart, a more seasoned competitor, has also enjoyed tremendous success in the sport of car racing. See id. ¶¶ 8-9. Yet despite his international renown as a successful participant in

---

[1] The following factual allegations are drawn from plaintiffs' complaint and are assumed true only for purposes of this motion. See, e.g., Calabrese v. Teoco Corp., 637 F. Supp. 2d 160, 161 (S.D.N.Y. 2009).

some of the most popular racing series in the world, defendant is still known to occasionally race in smaller, more local events. Id. ¶ 11.

That was the case on August 9, 2014, when decedent, Stewart, and twenty-two other drivers began the final race of a "Super Sprint" series event being held at Canandaigua Motorsports Park in Canandaigua, New York.[2] Compl. ¶¶ 12, 15. During the fourteenth lap, defendant's race car made contact with decedent's car, causing decedent to "crash into the wall at the high side of the track." Id. ¶ 16. At or around this same time, the race track also came under a "yellow caution" flag, understood by the drivers as a signal that required them to "slow down and move away" from a hazard on the track "by either moving higher on the track or lower depending on where the hazard is located." Id. ¶¶ 7, 17.

While the remaining drivers, including Stewart, continued the final race, decedent exited his now-disabled race car and "made his way a short distance down the track on foot." Compl. ¶ 18. Although "6 cars safely passed [decedent] while he was standing on the track," defendant approached decedent in his race car and "gunned his engine, causing his 700 horsepower vehicle to slide and strike [decedent] with his right rear tire, crushing [decedent] and flinging his body an estimated 25 feet down the track." Id. ¶¶ 18, 20. Decedent suffered injuries that soon proved fatal. Id. ¶ 21.

---

[2] Sprint cars are high-powered race cars designed to run on a banked circular track that is one-half mile in length. See Compl. ¶ 6. Both decedent and Stewart had successfully completed one eight-lap qualifier "heat" to secure their positions in the final race. Id. ¶ 14.

## III. **DISCUSSION**

Stewart argues that maintaining the action in this District will pose an undue hardship on the litigants and witnesses. Plaintiffs, for their part, have signed a proposed stipulated order indicating they would consent to defendant's proposed transfer.

As an initial matter, "consent of all parties is not a basis for ordering transfer" pursuant to § 1404(a). 15 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, & Richard D. Freer, Federal Practice and Procedure § 3841 (4th ed. 2013). Rather, "[t]he transferor court must still conclude that the Section 1404(a) statutory factors of convenience and the interest of justice justify transfer." Id. (explaining that the parties are not consenting to transfer, but are instead consenting to the transferee court after the transferor court determines that transfer is proper based upon the longstanding statutory factors).

In fact, a review of case law confirms that district courts regularly conduct the same multi-factor analysis regardless of whether plaintiffs have signaled their consent to the proposed transferee forum. See, e.g., Hess v. McBride, 2015 WL 4740792, at *2 (E.D.N.C. Aug. 10, 2015) (conducting venue transfer analysis where plaintiffs' response stated "only that [they] consent to the transfer of this matter" (citation and internal quotation marks omitted)); Oliver v. United States, 2014 WL 4543005, at *1 (E.D.N.Y. Sept. 12, 2014) (conducting same analysis despite plaintiff's consent to transfer); Banc of America Leasing & Capital, LLC v. Windermere West Valley Partners, LLC, 2009 WL 3806403, at *1 (N.D. Iowa Nov. 10, 2009) (same); Harris v. Lawson, 2008 WL 4003999, at *1 (M.D. Ga. Aug. 27, 2008) (same); O'Brien & Gere, Inc. of N. Am. v. Barton Rands, Ltd., 497 F. Supp. 2d 507, 510 (W.D.N.Y. 2007) (same). Accordingly, the same approach will be applied in this case.

Specifically, this approach is grounded in 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

"In determining whether a transfer of venue pursuant to 28 U.S.C. § 1404(a) is appropriate, district courts engage in a two-part inquiry, asking: (1) whether an action 'might have been brought' in the proposed transferee forum, and if so, (2) whether the transfer promotes convenience and justice." Wilson v. DirectBuy, Inc., 821 F. Supp. 2d 510, 515 (D. Conn. 2011).

### A. Whether This Action Might Have Been Brought in the Proposed Forum

There is no question that this action "might have been brought" in the Western District of New York.

"To decide whether an action 'might have been brought' in the proposed transferee forum, the court must first determine whether the defendants are subject to personal jurisdiction in that forum, and whether venue would properly lie there." Wilson, 821 F. Supp. 2d at 515.

Taking the second element of this inquiry first, the relevant statute provides that venue in a civil action may be laid in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Here, the facts alleged in plaintiffs' complaint concern events that occurred over the span of a few minutes in Canandaigua, New York. Because Canandaigua, which is located in Ontario County, is in turn situated within the confines of the proposed transferee forum, venue would properly lie

there.  See 28 U.S.C. § 112(d) (enumerating the list of counties comprising the Western District of New York).

These same factual allegations would also appear to provide a basis for the exercise of personal jurisdiction over Stewart in the proposed transferee forum.  "In a diversity or federal question case, personal jurisdiction is determined by the law of the state in which the district court sits."  Doe v. Ciolli, 611 F. Supp. 2d 216, 220 (D. Conn. 2009).

As relevant here, New York's long-arm statute provides for personal jurisdiction over a non-domiciliary who "commits a tortious act within the state" while physically present there.  N.Y. C.P.L.R. § 302(a)(2); see also Emerald Asset Advisors, LLC v. Schaffer, 895 F. Supp. 2d 418, 430 (E.D.N.Y. 2012) (analyzing § 302(a)(2) and noting that the Second Circuit has consistently construed New York law to require the tortfeasor's physical presence in the state).  Stewart is an Indiana domiciliary who committed the allegedly tortious acts while physically present in Canandaigua, New York.[3]  See Compl. ¶¶ 2, 20.  Accordingly, this action "might have been brought" in the Western District of New York.[4]

### B. **Whether Transfer Promotes Convenience and Justice**

"Section 1404(a) is intended to prevent waste of time, energy and money and to protect litigants, witnesses and [the] public against unnecessary inconvenience and expense."  Rindfleisch v. Gentiva Health Sys., Inc., 752 F. Supp. 2d 246, 250 (E.D.N.Y.

---

[3] Subject matter jurisdiction would remain unaffected by the proposed inter-district transfer since plaintiffs are domiciled in Port Leyden, New York.  Compl. ¶ 1; see also 28 U.S.C. § 1332 (providing federal jurisdiction over civil actions between citizens of different states where the "matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs").

[4] Notably, however, there appears to have been no guarantee that the plaintiffs would have drawn the Rochester Division had they chosen to file there.  See, e.g., Gorzynski v. JetBlue Airways Corp., 10 F. Supp. 3d 408, 411 (W.D.N.Y. 2014) (discussing that District's Local Rule regarding random case assignments between divisions).

2010) (alteration in original) (citation and internal quotation marks omitted). Accordingly, the second prong of the transfer analysis requires careful consideration of: (1) the plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of the parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; (7) the relative means of the parties; (8) the proposed forum's familiarity with the governing law; and (9) trial efficiency and the interests of justice, based on a totality of the circumstances. Horanzy v. Vemma Nutrition Co., –F. Supp. 3d–, 2015 WL 728379, at *3 (N.D.N.Y. Feb. 18, 2015).

Importantly, "[t]here is no strict formula for the application of these factors, and no single factor is determinative." Rindfleisch, 752 F. Supp. 2d at 250. "Instead, these factors should be applied and weighed in the context of the individual circumstances of the particular case." Id. Ultimately, however, "[t]he movant bears the burden of establishing the propriety of transfer by a clear and convincing showing." Horanzy, 2015 WL 728379, at *3 (quoting Wilson, 821 F. Supp. 2d at 513). Indeed, "absent a strong showing that the balance of factors favors the alternative forum, the plaintiff's choice of forum will not be disturbed." Fellner v. Cameron, 2010 WL 68128, at *3 (W.D.N.Y. Feb. 24, 2010).

Stewart asserts that the relevant factors all weigh heavily in favor of a transfer to the Western District of New York, Rochester Division.

### 1. Plaintiffs' Choice of Forum

"The Second Circuit has consistently held that a plaintiff's choice of forum is presumptively entitled to substantial deference." Atl. Recording Corp. v. Project Playlist, Inc., 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009) (Chin, J.) (citation and internal quotation marks

omitted). "This deference stems from the presumption that a plaintiff selects a forum based on convenience." Medien Patent Verwaltung AG v. Warner Bros. Entm't, Inc., 749 F. Supp. 2d 188, 190 (S.D.N.Y. 2010) (citation omitted).

In this case, plaintiffs chose to file suit in state court in Lewis County, a location embraced by the Northern District of New York. See N.D.N.Y. Gen. Order 12; see also 28 U.S.C. § 112(a) (enumerating the list of counties comprising the Northern District of New York). Because this is also the county in which plaintiffs reside, this fact would ordinarily weigh heavily against transfer. See Atl. Recording Corp., 603 F. Supp. 2d at 698 (noting that the presumption in favor of a plaintiff's choice of forum is at its strongest "where the chosen forum is also the plaintiff's home"); see also EasyWeb Innovations, LLC, 888 F. Supp. 2d at 349 (concluding plaintiff's decision to file in his "home district" was entitled to strong deference).

Indeed, even though Stewart's removal of this action to federal court may have compromised plaintiffs' initial choice of forum to some degree, maintaining the action in this District would work to preserve plaintiffs' initial decision to file suit in a location close to home.[5] See Harris, 2008 WL 4003999, at *4 (reaching similar conclusion regarding this factor where defendant removed from state to federal court). And since the federal removal statute provides that an action may only be removed to the district court "for the district and division embracing the place where such action is pending," defendant's conscious decision to nevertheless remove this case arguably means he has effectively "chosen" this forum as well. See § 1441(a).

---

[5] Plaintiffs filed this action in Lewis County, New York, whose courthouse sits approximately 55 miles from the Northern District of New York, Utica Division's courthouse, but over 150 miles from the Western District of New York, Rochester Division's courthouse.

- 8 -

However, courts have also noted that the weight ordinarily afforded this factor should be somewhat diminished where, inter alia, the operative facts alleged in the lawsuit have "little or no connection" to the forum chosen by the plaintiff. Rindfleisch, 752 F. Supp. 2d at 251. That is the case here. As the factual allegations detailed above reveal, Stewart is correct to argue that the locus of operative facts lies in the proposed transferee forum. Likewise, plaintiffs' decision to signal their consent to defendant's proposed forum would also seem to diminish the degree of deference ordinarily afforded this element in the analysis. Bearing all these competing facts in mind, this factor is neutral with regard to transfer.

### 2. Convenience of Witnesses[6]

"In deciding whether to disturb a plaintiff's choice of forum, the convenience of the witnesses is generally the most important factor in the transfer analysis." Rindfleisch, 752 F. Supp. 2d at 252. "Parties seeking consideration of this factor must specify the identity of key witnesses and the nature of their likely testimony, and support these statements with affidavits." Wilson, 821 F. Supp. 2d at 517.[7]

In support of this factor, Stewart first identifies five Ontario County employees and officials who were directly involved in the factual investigation of the events that occurred at Canandaigua Motorsports Park: (1) Investigator John Abraham; (2) Brad Falkey; (3) Kevin Henderson; (4) Deputy William Martin; and (5) Michael Rago. Gwitt Affirmation ¶¶ 16a-16e.

---

[6] Because plaintiffs did not submit a list of witnesses believed to be relevant to this action, only those individuals identified in Stewart's papers have been considered in this analysis.

[7] Stewart has not submitted an affidavit from any potential witnesses; rather, he has submitted an attorney affidavit detailing possible witnesses and their likely testimony.

Defendant asserts that Mr. Falkey and Mr. Rago reside somewhere in Ontario County, while Mr. Henderson resides somewhere in Canandaigua, New York.[8] Id.

Stewart further identifies four additional witnesses who may also be in a position to provide relevant, material testimony: (1) Jeremie Corcoran, a resident of Central Square, New York and the owner of Canandaigua Motorsports Park; (2) Brian Ennis, a resident of Andover, New York and an Empire Super Sprint technician who was eyewitness to the event; (3) Chuck Hebing, a resident of Ontario, New York and the driver of the race car who was immediately in front of defendant prior to his collision with decedent; and (4) Dean Reynolds, a resident of North Syracuse, New York and the first person to whom defendant spoke following the events at issue in this case.[9] Gwitt Affirmation ¶¶ 19a-19d.

Finally, Stewart identifies three individuals who reside outside New York State and are believed to be relevant in this case: (1) Jimmy Carr, a resident of Missouri or Indiana and the individual who built the race car defendant was driving on the day in question; (2) Gary Cooper, a resident of Illinois and an investigator retained by defendant to analyze evidence resulting from the incident; and (3) Chad Johnston, a resident of North Carolina and defendant's "crew chief." Gwitt Affirmation ¶¶ 21a-21c.

Of course, the testimony of the Ontario County officials who were directly involved in the factual investigation of the incident will undoubtedly be the sort of valuable, material testimony that matters in evaluating this factor. See Berger v. Cushman & Wakefield of Pa., Inc., 2013 WL 4565256, at *5 (S.D.N.Y. Aug. 28, 2013) ("In evaluating this factor, the court

---

[8] Notably, however, the attorney's affidavit does not appear to directly identify where Investigator Abraham or Deputy Martin are actually believed to reside.

[9] As discussed in more detail below, both Mr. Corcoran and Mr. Reynolds reside in the Northern District of New York.

- 10 -

should look beyond the quantity of witnesses and assess the quality of the testimony to be offered."). By the same token, however, each of the other witnesses identified by Stewart, many of whom are individuals that were directly involved in organizing and conducting the race when the incident occurred, would seem to be in the same sort of privileged position. Notably, several of these witnesses reside in the Northern District of New York or in one of several out-of-state locations.

Nevertheless, Stewart argues that transfer is warranted because travel to the Western District of New York, Rochester Division courthouse will be significantly more convenient for the witnesses located in Ontario County. Defendant further argues that, because the City of Rochester has an international airport while the City of Utica does not, travel to the Western District of New York, Rochester Division for the out-of-state witnesses will be significantly more convenient. These facts, defendant argues, tip the balance of this factor heavily in favor of transfer.

However, the mere physical distance between the courthouses of the Northern District of New York, Utica Division and the Western District of New York, Rochester Division does not automatically require a finding that this factor favors transfer. To be sure, the courthouses themselves sit roughly 135 miles apart.[10] But closer scrutiny reveals that travel to either location by *all* of the various non-party witnesses identified by Stewart would require some degree of travel and, therefore, some degree of inconvenience.

---

[10] Distances and geographic locations noted in this opinion were calculated using Google Maps, see http://maps.google.com, and judicially noticed pursuant to Federal Rule of Evidence 201, an accepted practice among courts analyzing these motions. See, e.g., Rindfleisch, 752 F. Supp. 2d at 259 n. 13 (noting that courts "commonly use internet mapping tools to take judicial notice of distance and geography" and collecting cases).

- 11 -

First, this argument ignores the fact that a number of the witnesses Stewart identifies actually reside either in the Northern District of New York (such as Mr. Reynolds and Mr. Corcoran) or in one of several out-of-state locations (such as Mr. Carr, Mr. Cooper, and Mr. Johnston). Of course, the Utica Division courthouse will be a more convenient trip for both Mr. Reynolds and Mr. Corcoran. And putting aside the fact that Syracuse-Hancock International Airport, located in the Northern District of New York, sits only 56 miles away from the Utica Division courthouse, the marginal difference in convenience that may accrue to out-of-state witnesses who will be forced to travel from one airport or the other regardless of whether transfer is ultimately granted (Mr. Carr, Mr. Cooper, and Mr. Johnston) is not actually a significant factor in this analysis. See Atl. Recording Corp., 603 F. Supp. 2d at 696 n. 8 (collecting cases noting that, where an individual will be required to travel regardless of whether a transfer is granted, a marginally shorter distance is not significant); see also Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F. Supp. 2d 203, 209 (S.D.N.Y. 1998) (noting in context of this factor that an "extra hour's drive does not warrant transfer of this case").

Further, although Brad Falkey, Kevin Henderson, and Michael Rago are each believed to reside somewhere in Ontario County, these witnesses will also be required to travel some distance regardless of where trial is ultimately held: either 32 miles *west* to reach the Western District of New York, Rochester Division's courthouse or approximately 120 miles *east* to reach the Northern District of New York, Utica Division's courthouse steps.[11]

---

[11] It also bears noting that Ontario County is a relatively large political subdivision of New York State. Consequently, simply stating in an affidavit that an anticipated witness resides somewhere within the confines of a large county is of limited value in determining the actual distance that must be traveled.

At the end of the day, then, the issue becomes whether the *additional* amount of travel required to reach the courthouse in downtown Utica—at most, an additional 88 miles for several key witnesses—constitutes the sort of significant inconvenience that would tip the balance in favor of transfer.[12] A review of the case law makes it easy to conclude that it does not. See, e.g., Gorzynski, 10 F. Supp. 3d at 413 (concluding that requiring witnesses to travel 60 additional miles from Buffalo Division to Rochester Division was not the kind of "inconvenience" that supports § 1404(a) transfer); Moore v. Allentown Vill. Soc., Inc., 2013 WL 4008740, at *2 (W.D.N.Y. Aug. 5, 2013) (concluding that, although intra-district transfer motions are judged by an even less rigorous standard, defendants' motion still failed because, inter alia, "any inconvenience of parties or witnesses traveling from Buffalo to Rochester for court proceedings is de minimus"); Schwartz v. Marriott Hotel Servs., Inc., 186 F. Supp. 2d 245, 249-50 (E.D.N.Y. 2002) (judicially noticing that venues at issue were only 65 miles apart and collecting cases expressing skepticism about the weight to be accorded such a marginal difference); People v. Operation Rescue Nat'l, 69 F. Supp. 2d 408, 417 (W.D.N.Y. 1999) (noting that "courts have repeatedly held that traveling [this sort of relatively short distance] is not the type of 'inconvenience' that supports a motion to transfer under § 1404(a)" and collecting additional cases); Orb Factory, Ltd., 6 F. Supp. 2d at 209 (noting an "extra hour's drive does not warrant transfer of this case"); Jenkins v. Wilson Freight Forwarding Co., 104 F. Supp. 422, 425 (S.D.N.Y. 1952) (noting that § 1404(a) should

---

[12] It is further noted that the Honorable Thérèse Wiley Dancks, the U.S. Magistrate Judge to whom this case has been referred for purposes of all pre-trial proceedings, sits in the Northern District of New York, Syracuse Division courthouse. This courthouse is actually located even closer than the Utica Division, sitting only 70 miles to the east of Ontario County.

- 13 -

not ordinarily be used to facilitate transfer from the Southern District of New York to adjoining districts).

In other words, because: (1) several key out-of-state witnesses will be forced to travel regardless of whether transfer is granted; (2) other key witnesses already reside within this District; (3) the additional travel that may be required of one or more Ontario County residents is relatively minimal; and (4) there are no affidavits from any potential witnesses claiming a particular hardship, this factor weighs against transfer.

### 3. **Location of Documents and Access to Sources of Proof**

With respect to this factor, Stewart first asserts that "the Ontario County Sheriff's office may still be in possession of documents" related to its investigation of the incident at issue in this case. Gwitt Affirmation ¶ 17. However, "[t]he location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." Am. S.S. Owners Mut. Prot. & Indemn. Ass'n v. Lafarge N. Am., Inc., 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007). Because defendant has not represented that there would be some additional degree of difficulty associated with transmitting any relevant documents that may be in the Sheriff's Office's possession to the current forum, this fact does not weigh in favor of transfer.

Further, although Stewart also asserts that "inspection of the track" may be necessary to prepare for trial, he has provided no explanation regarding how such inspection would be impeded by maintaining the action in this District.[13] See Gwitt Affirmation ¶ 22. And to the

---

[13] To the extent Stewart also claims that additional, as-yet-unidentified witnesses will likely be located near the site of the race track in Canandaigua, New York, travel to the Utica Division will not be an undue hardship on these individuals for the same reasons explained above.

extent defendant's statement is construed as suggesting a jury view of the track may become necessary, this course of action is generally "frowned upon and should rarely be used." Mohamed v. Mazda Motor Corp., 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000) (citation omitted). In any event, defendant would bear the burden of demonstrating the need for a jury view, and his free-standing assertion, made at this early stage of the case, does not suffice to meet that burden. See 15 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, & Richard D. Freer, Federal Practice and Procedure § 3854 (4th ed. 2013) ("Courts should refuse to take into account the possibility of a jury view unless the moving party has shown how a view of the locality of the events could be helpful."). Accordingly, this factor does not favor transfer.

### 4. Convenience of Parties

"Where transfer would merely shift the inconvenience from one party to the other, the Court should leave plaintiff's choice of venue undisturbed." Rindfleisch, 752 F. Supp. 2d at 258. However, "transfer of venue may be appropriate where inconvenience for the party moving for transfer could be completely eliminated without substantially adding to the nonmoving party's inconvenience." Id.

Those circumstances are not present here. Stewart, a resident of Indiana, would be obligated to travel regardless of whether this action is heard in the Northern District of New York or the proposed transferee forum. And plaintiffs, residents of Lewis County, would actually be required to travel a greater distance to reach the proposed forum than they would otherwise be required to travel within this district; in fact, a change of venue would impose a three-fold increase in travel distance for them. See Gwitt Affirmation ¶ 24. Accordingly, this factor weighs against transfer.

### 5. Locus of Operative Facts

"The locus of operative facts is an important factor to be considered in deciding where a case should be tried." Wilson, 821 F. Supp. 2d at 518. The facts alleged in this case occurred in the Western District of New York. Accordingly, this factor favors transfer.[14]

### 6. Availability of Process

Generally speaking, "Rules 45(b)(2) and 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure prohibit a subpoena from directing a witness to travel more than 100 miles." EasyWeb Innovations, LLC, 888 F. Supp. 2d at 354 (citing FED. R. CIV. P. 45); see also Horanzy, 2015 WL 728379, at *7 ("A district court may not issue a subpoena directing a witness to travel more than 100 miles.").

With respect to this factor, Stewart argues that "more non-party witnesses are unavailable for subpoena in the Northern District than in the Western District of New York." Def.'s Mem. at 13. First, however, "[d]iscovery is not an important consideration under this factor because the parties can choose a place of compliance to accord the terms of [ ] Federal Rule of Civil Procedure 45, which governs subpoenas." Osgood v. Discount Auto Parts, LLC, 981 F. Supp. 2d 1259, 1265 (S.D. Fla. 2013).

And with respect to a trial that may be necessary at some point in the future, Rule 45 permits a district court to compel a person located beyond its 100-mile radius to attend trial provided the court sits "within the state where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1)(B)(ii); see also Mohamed, 90 F. Supp.

---

[14] It is noted that the Canandaigua Motorsports Park sits approximately 31 miles to the east of the Rochester Division's courthouse and approximately 116 miles west of the Utica Division's courthouse, a total difference of only 85 miles and a driving time of approximately 1.5 hours.

2d at 778 (warning litigants not to make the mistake of arguing that a witness outside the 100-mile radius cannot be compelled to attend trial within the state).[15]

Those foibles aside, however, Stewart has given no indication that any of the named individuals, or any other non-party witnesses for that matter, would refuse to appear or that deposition or videotaped testimony would be an inadequate substitute in the event such a refusal occurred. See, e.g., Pecorino v. Vutec Corp., 934 F. Supp. 2d 422, 442 (E.D.N.Y. 2012) ("[N]either party has offered anything more than speculation that their non-party witnesses . . . would be unwilling to travel for trial."); Citigroup, Inc. v. City Holding Co., 97 F. Supp. 2d 549, 562 (S.D.N.Y. 2000) ("[T]he unavailability of process over third-party witnesses does not compel transfer when the practical alternative of offering videotaped or deposition testimony of a given witness exists."). Accordingly, this factor does not favor transfer.

### 7. Relative Means of Parties

"Courts may consider the relative financial hardship to litigants in prosecuting or defending an action in a particular forum." Wilson, 821 F. Supp. 2d at 518. Here, Stewart, an internationally known racing star, would presumably be better able to bear the expense of litigating in an inconvenient forum. However, as noted above, plaintiffs (and defendant, for that matter) would be required to travel some distance regardless of whether this action was heard in this district or the proposed transferee district. Accordingly, this factor does not favor transfer.

---

[15] Ordinarily, this provision of Rule 45 is not implicated because the party moving for transfer is seeking transfer to an out-of-state forum.

### 8. Familiarity with Governing Law

Plaintiffs assert causes of action under New York law and therefore both this forum and the proposed transferee forum are equally capable of adjudicating the claims. Accordingly, this factor does not favor transfer.

### 9. Trial Efficiency & Interests of Justice

"Although certainly not decisive, docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor and is accorded some weight." Pecorino, 934 F. Supp. 2d at 444.

As relevant here, the median time from filing to trial in the Western District of New York is 47.6% longer than in the Northern District of New York—66.3 months versus 40.8 months, respectively. See U.S. District Courts-Combined Civil and Criminal Federal Court Management Statistics (March 31, 2015), available at http://www.uscourts.gov/file/18187/download (last visited Sept. 18, 2015); see also Cruz v. Borgenicht, 2014 WL 3696207, at *5 (E.D.N.Y. July 24, 2014) (considering same statistical data); Excellent Home Care Servs., LLC v. FGA, Inc., 2014 WL 652357, at *5 (E.D.N.Y. Feb. 19, 2014) (same). Considering the relatively large difference in time from filing to trial, this factor weighs in favor of maintaining this case in the Northern District of New York.[16]

## IV. CONCLUSION

Section 1404(a) was "designed and reserved for those instances where the transfer was sought to a District Court substantially distant from the district where the action had been

---

[16] It is also judicially noticed that a related case, AXIS Ins. Co. v. Stewart, 7:15-CV-1131(DNH/TWD), has recently been filed in this District. Maintaining both actions in the same District will obviously "conserve judicial resources and promote consistency and uniformity." Mastr Asset Backed Sec. Trust 2007-WMC1, ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. LLC, 880 F. Supp. 2d 418, 424 (S.D.N.Y. 2012).

instituted." Jenkins v. Wilson Freight Forwarding Co., Inc., 104 F. Supp. 422, 425 (S.D.N.Y. 1952).

That is decidedly not the case here. After careful consideration of the relevant factors, most of which either do not favor transfer or actually weigh against transfer, Stewart has failed to "make a clear-cut showing that transfer is in the best interests of the litigation." Indian Harbor Ins. Co. v. Factory Mut. Inso. Co., 419 F. Supp. 2d 395, 401 (S.D.N.Y. 2005) (citation omitted); see also Li v. Hock, 371 F. App'x 171, 175 (2d Cir. 2010) (summary order) ("Absent a clear and convincing showing that the balance of convenience strongly favors the alternate forum . . . discretionary transfers are not favored.").

"This case is not being consigned to the wastelands of Siberia or some remote, distant area of the Continental United States." Mohamed, 90 F. Supp. 2d 757 (E.D. Tex. 2000). Rather, maintaining this action in the Northern District of New York will merely require a few individuals to travel an additional distance to reach the Utica Division courthouse in the event a trial is held at some point in the future.

Therefore, it is

ORDERED that

1. The parties' proposed stipulated order is REJECTED; and

2. Stewart's motion to transfer venue is DENIED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: September 29, 2015.
        Utica, New York.